**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
|  | ) | CASE NO. 2:20-cr-20492-AJT-EAS-1 |
|  | ) |  |
| UNITED STATES OF AMERICA, | ) | JUDGE: ARTHUR J. TARNOW |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| V. | ) |  |
|  | ) |  |
| JASON CORNUTE, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

**DEFENDANT'S SENTENCING MEMORANDUM**

**I. Introduction**

Defendant Jason Cornute is scheduled for a sentencing hearing on July 9, 2021 via videoconferencing. The change of plea hearing took place on February 22, 2021, through videoconferencing due to the Court's COVID-19 protocols to reduce the number of in-person hearings in the wake of the pandemic. Sentencing was originally scheduled for June 9, 2021, but was rescheduled until July 9, 2021, due to Counsel's medical issues. Mr. Cornute hereby waives his right to be present in-person for Sentencing.

Under the proposed plea agreement ("Agreement"), Mr. Cornute pled guilty to Count I: Possession with Intent to Distribute Fentanyl in violation of 21 U.S.C. §841(a)(1) and the Forfeiture allegations pursuant to 21 U.S.C. §853.

For the reasons set forth in this memorandum, counsel respectfully suggests a minimum sentence of incarceration, as it relates to the appropriate sentencing range, be imposed. Such a

sentence would, in our opinion, be "reasonable" and is in harmony with the guidelines which compel some period of incarceration for this drug offense.

## II.     Relevant Law & Argument

District courts have discretion in determining sentences according to the provisions of 18 U.S.C. §3553(a). **United States v. Booker, 543 U.S. 220, at 259-60 (2005)**. Section 3553(a)(2) states that "a district court should impose a sentence sufficient, but no greater than necessary . . . (A) to reflect the seriousness of the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed . . . training, medical care, or other correction treatment…".

Section 3553(a) further provides that the district court should weigh factors such as "the nature and circumstances of the offense and the history and characteristics of the defendant"; the articulated policy goals of the guidelines"; "the need to avoid unwarranted sentence disparities" among similar defendants; and "the need to provide restitution to any victims of the offense." Section 3553(a)(1), (3)-(7).

The guidelines are merely one of the factors that the Court must consider in sentencing. When a district court imposes a sentence and it is reviewed for reasonableness, the focal point is on 18 U.S.C. § 3553(a). In Section 3553(a), there are numerous factors for a court to consider and under Booker's remedial holding, the sentencing guideline range is one of those factors. That is, while the guidelines remain important, they are now just one of the numerous factors that a district court must consider when sentencing a defendant. See e.g., **United States v. Webb, 403 F.3d 373 (6th Cir. 2005)** ("While a district court must still give some consideration to the appropriate guideline range when making a sentencing determination, a court is no longer bound by the applicable guidelines.)

Once the appropriate advisory guideline range is calculated, the district court, as ***Booker*** requires, considers all of the relevant Section 3553(a) factors, including the guideline range, and then imposes a sentence. ***United States v. McBride*, 434 F.3d 470, 475-76 (6th Cir. 2006)**.

**III.     Case History**

On September 21, 2020, Mr. Cornute made an initial appearance before United States Magistrate Judge Anthony P. Patti in the wake of the unsealing of a Complaint on July 30, 2020. Mr. Cornute was ordered released on a $10,000.00 unsecured bond.

On October 7, 2020, Mr. Cornute was indicted in the above-captioned case on one Count of Possession with Intent to Distribute Fentanyl in violation of 21 U.S.C. 841(a) and Forfeiture Allegations pursuant to 21 U.S.C. 853. On October 9, 2020, Mr. Cornute entered a plea of "not guilty" to the Indictment and was continued on his original bond.

Mr. Cornute changed his "not guilty" plea to "guilty" on February 22, 2021. The original bond was continued, and a sentencing hearing was scheduled.

**IV.     Acceptance of Responsibility and Safety Valve**

Due to the nature of the Agreement, Mr. Cornute and the Government have agreed to not advocate for an upward or downward departure or variance, except as otherwise agreed upon in the Agreement. Both parties understand that the Court is not bound by the Agreement and may depart should he deem appropriate. Included in the Agreement's terms is an agreement that the Court may impose a sentence below the mandatory statutory minimum should he find that Mr. Cornute qualifies under 18 U.S.C. §3553(f).

Indeed, Mr. Cornute, in our judgment, not only qualifies for "safety valve" consideration under 18 U.S.C. §3553(f) but has satisfied all of the requirements under the Statute. Mr. Cornute admitted his role to the greatest extent of his recollection.

During his Zoom meeting with the Government, Mr. Cornute was truthful and candid about his role in relation to the charge against him. Mr. Cornute further admitted and accepted responsibility for his actions, having been "hired" as a "mule" to transport what he came to understand were counterfeit Oxycontin pills laced with fentanyl.

## V.      Offender Characteristics and Mitigating Factors

Mr. Cornute was born on January 19, 1981, to parents Clarence Cornute, III, and Donnella Fortson. As a child, Mr. Cornute was lighthearted and calm in demeanor, while a fierce competitor in sports. He, like most children, had dreams of playing professionally; particularly, for his hometown team, the Cleveland Cavaliers. Indeed, Mr. Cornute was especially talented in basketball, competing with Amateur Athletic Union (AAU) teams that traveled the country.

Despite Mr. Cornute's, otherwise idyllic upbringing, he experienced immense tragedy when his father passed away unexpectedly from a heart attack two days before Mr. Cornute's eighth birthday. Mr. Cornute buried his father four days later.  Mr. Cornute was devastated but channeled his emotions into playing the sport he and his father loved. His dedication to the sport earned him high praises nationwide and sparked expectations of him being an early round draft pick after graduation of college.

Understanding the value of education, Mr. Cornute sought out various post-secondary programs after graduating from Maple Heights High School in Maple, Ohio in 1999. Mr. Cornute attended Genessee Community College (GCC) on full athletic scholarship. While a student-athlete, he excelled tremendously on the Court while gaining a true love, and passion, for

helping others. Mr. Cornute began volunteering with individuals with disabilities at the school and surrounding community with basketball clinics. After graduating from GCC in 2001, Mr. Cornute volunteered the whole summer with the Ohio Special Olympics after being offered a full athletic scholarship to a Division I, four-year school, Radford University.

Unfortunately, Mr. Cornute's education was derailed when, after his junior year of college, his mother lost her job resulting in Mr. Cornute leaving school to help his family.

When Mr. Cornute returned home, he found work with several different jobs while volunteering back in Ohio with adults with disabilities and still pursuing his dream of playing professional basketball. Mr. Cornute finally received the opportunity to play professional basketball in the American Basketball Association and then in Germany for a short period.

Upon a brief period of living out his dream, Mr. Cornute returned home to work in the M.R.D.D. field as we all start a family. Mr. Cornute then pursued a dream, once deferred: obtaining his Bachelor's degree. With his son and a daughter on the way, Mr. Cornute earned his degree in Business Management in 2011.

Greatly inspired by his children to be the best version of himself and serve as a role model, Mr. Cornute is actively involved in the raising of all of his children and is extremely close to each child.

Feeling an intense pressure and desire to be present for his children in the way that his parents had provided for him, Mr. Cornute focused his attention on trying to maintain employment, which he has steadily maintained from 2014 until the months leading up to the underlying facts of the case, herein. In the wake of his unemployment and despite his efforts, Mr. Cornute ended up in the space between ends that never seemed to meet, thereby resulting in certain decisions that ultimately led to the behavior at issue, here.

In 2013, Mr. Cornute's stepfather, whom his mother had married in 1993, passed away from throat cancer. Mr. Cornute's relationship with his father was positive, he recalls that his stepfather, although doting at times, suffered from alcoholism, which often manifested in erratic and verbally abusive behavior. Despite the largely positive memories of his stepfather who raised him during his teenage years, Mr. Cornute still struggles with the memories of his stepfather's belligerence towards him and his mother and the inability to reconcile those issues.

Mr. Cornute currently the sole caretaker of his mother who is a lung and uterine cancer survivor. His mother also suffers from Chronic Obstructive Pulmonary Disorder (COPD) and underwent a quadruple bypass surgery in 2019. Although Mr. Cornute has siblings he is the only person who is able to take care of her and assist her in her daily life maintenance routines.

In the wake of his mother's illnesses and the responsibilities of caring for his children, Mr. Cornute made some incredibly poor decisions, the facts of our case are reflected in Part A, Paragraphs 9-17 of the pre-sentence report.

It was then at Mr. Cornute's lowest that an opportunity to make some fast money was presented to Mr. Cornute. In truth and in fact, Mr. Cornute knew that the conduct in which he was asked to engage was likely illegal. Still, the pressures of not being able to provide for himself, much less his family, weighed heavily in favor of this detour from an otherwise reasonably law-abiding life. Admittedly, prior to the instant offense, Mr. Cornute had only been convicted of two municipal court level disorderly conduct offenses, one in 2001 and one in 2007. However, without demeaning the seriousness of any offense against the law, it is clear that none of those offenses were nearly as severe as the one pled guilty to, herein. Thus, it would appear likely that but for the negative externalities experienced by Mr. Cornute prior to the commission of this offense, Mr. Cornute would likely never have committed a crime of this magnitude.

Certainly, he has been impressed that, even under the greatest pressure, committing a crime is not the answer. He is genuinely remorseful for what has happened, here.

Since his arrest, Mr. Cornute's family and friends have rallied to his aid offering to help him rebuild his life upon his release. An island unto himself no more, Mr. Cornute's family and friends have pledged to provide guidance and support in any way necessary to help Mr. Cornute reintegrate into society.

## VI.    Conclusion

Counsel is reminded of a quote by the late Maya Angelou who once said, "At our very best, we are only human. And, at our very worst, we are only human." We ask this Court to consider that Jason Cornute *is* only human. And like us all, even our most flawless expectations and unadulterated intentions are often blemished by the harsh reality that, in life, all of us fall short of the mark sometimes. Mr. Cornute has accepted responsibility for his own actions. Further, Mr. Cornute does not intend to ever find himself before this, or any other, Court ever again.

Wherefore, in reverence for the Agreement, Mr. Cornute asks this Court to impose a sentence at the lowest bound of the guideline range.

Counsel asks that the Court recommend F.C.I. Elkton for Mr. Cornute to serve his term of incarceration.

                                                      Respectfully submitted,

                                                      /s/ James R. Willis

                                                      _____
JAMES R. WILLIS, ESQ. (0032463)
75 Erieview Plaza, Suite #108
Cleveland, OH 44114
Tel: (216) 523-1100
Fax: (216) 575-7664
Email: jrwillis-barrister@sbcglobal.net
A*ttorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2021, a copy of the foregoing *Memorandum* was filed electronically. Notice of this filing was sent to all parties via the Court's electronic filing system.

/s/ James R. Willis

JAMES R. WILLIS, ESQ. (0032463)
*Attorney for Defendant*